1

2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3

4

5

6

7

8

| | |
|---|---|
| LIBERTY INSURANCE CORPORATION and LM GENERAL INSURANCE COMPANY,<br><br>        Plaintiffs<br><br>v.<br><br>YVONNE BRODEUR, et al.,<br><br>        Defendants | Case No.: 2:19-cv-00457-APG-VCF<br><br>**Order (1) Granting in Part Liberty's Motion to Strike, (2) Denying Defendant Meneses' Summary Judgment Motion, and (3) Granting in Part Liberty's Summary Judgment Motion**<br><br>[ECF Nos. 19, 28, 29] |

9

10

11

12

13

14

15

16

        Defendant Elias Meneses went on a trip to Utah with defendants Yvonne and Jerry Brodeur and their son, Chase Stewart, to stay at the Brodeurs' cabin.[1]  After arriving at the cabin, Stewart took Meneses for a ride in an ATV, which tipped over causing injuries to Meneses' hand and wrist.  Meneses sued the Brodeurs in state court to recover for his injuries.  Plaintiffs Liberty Insurance Corporation and LM General Insurance Company (collectively, Liberty) issued auto and homeowners' insurance policies to the Brodeurs.  The parties dispute whether Liberty's policies cover the accident.  Liberty filed this suit seeking a declaration that the policies do not cover Meneses' injuries.

17

18

19

20

21

        Meneses moves for summary judgment, arguing that the homeowners' (HO) policy for the Utah cabin covers the accident. ECF No. 19.  The Brodeurs join that motion. ECF No. 20. Meneses attaches to the motion transcripts of depositions taken of himself and Yvonne Brodeur in the underlying state court case.  Liberty objects to the transcripts as inadmissible hearsay and because they were not disclosed in discovery before Meneses moved for summary judgment.[2]

22

23

---

[1] At the time of the accident, Stewart and Meneses were minors but they are now adults.

[2] Meneses disclosed the transcripts the day after Liberty filed its response to the summary judgment motion. ECF No. 28-1.

1  Liberty also contends that an exclusion of coverage in the Utah HO policy blocks coverage.

2  Alternatively, Liberty seeks relief under Federal Rule of Civil Procedure 56(d).

3        After briefing on that motion was completed, Meneses filed a "supplement" to his motion

4  and attached the transcript of Jerry Brodeur's deposition, which was taken in the state court case

5  after the close of discovery in this case. ECF No. 27. Liberty moves to strike the supplement as

6  unauthorized. ECF No. 28. Liberty also contends Meneses did not produce this transcript in

7  discovery in this case and did not advise Liberty that the deposition was being taken. Liberty

8  requests sanctions under Federal Rule of Civil Procedure 37(c)(1) in the form of excluding Jerry

9  Brodeur's testimony, as well as an award of Liberty's fees and costs incurred in responding to

10 the supplement under 28 U.S.C. § 1927 and the court's inherent authority.

11       Liberty also moves for summary judgment, arguing that the auto policies and the Nevada

12 HO policy do not provide coverage for the incident. Liberty contends that although the Utah HO

13 policy might cover the incident, an exclusion takes away the coverage and no exception to the

14 exclusion applies. Meneses and the Brodeurs separately oppose Liberty's motion.[3] They do not

15 address the auto policies or the Nevada HO policy. Instead, they argue the Utah HO policy

16 covers the incident because of an exception to the exclusion.

17       The parties are familiar with the facts, so I do not repeat them here except where

18 necessary. I grant in part Liberty's motion to strike because it is unopposed and the supplement

19 was unauthorized. However, I deny the motion to the extent it seeks to exclude Jerry Brodeur or

20 Stewart as witnesses, and I deny the request for fees and costs. I grant in part Liberty's motion

21

22 [3] Meneses filed an untimely motion for summary judgment along with his opposition and, in doing so, failed to comply with Local Rule IC 2-2(b) because he did not file the motion as a
23 separate entry, even after being advised to do so by the clerk's office. *See* ECF Nos. 30, 31. I deny the motion as untimely. *See* ECF No. 17 (setting December 19, 2019 deadline to file dispositive motions).

1  for summary judgment because the defendants have not disputed that the auto and Nevada HO

2  policies do not cover this incident.  However, I deny Liberty's motion as to the Utah HO policy

3  because a reasonable jury could find the exception to the exclusion applies.

4  **I.  MOTION TO STRIKE (ECF No. 28)**

5        Liberty moves to strike Meneses' supplement and the attached transcript of Jerry

6  Brodeur's deposition, which was taken in the state court case after discovery in this case closed.

7  Meneses did not respond, so I grant Liberty's motion as unopposed.  LR 7-2(d).  Further, the

8  supplement was filed without authorization in violation of Local Rule 7-2(g), which provides

9  that a "party may not file supplemental . . . briefs . . . or evidence without leave of court granted

10 for good cause.  The judge may strike supplemental filings made without leave of court."  Thus, I

11 grant Liberty's motion for this reason as well.

12        However, to the extent Liberty seeks to exclude the testimony of Jerry Brodeur and

13 Stewart[4] under Federal Rule of Civil Procedure 37(c)(1), I deny that request.  Liberty contends

14 the deposition transcripts were not disclosed as required by Rule 26(a)(1)(A)(ii).  That Rule

15 requires a party to disclose as part of its initial disclosures "a copy—or a description by category

16 and location—of all documents, electronically stored information, and tangible things that the

17 disclosing party has in its possession, custody, or control and may use to support its claims or

18 defenses, unless the use would be solely for impeachment."  The Rule thus applies to the

19 deposition transcripts, but it does not apply to the witnesses' live testimony.  When ruling on

20 summary judgment, I "do not focus on the admissibility of the evidence's form.  [I] instead focus

21

22 ─────────────────────────
[4] Stewart's deposition also was taken in the state court action after discovery in this case closed.
23 ECF No. 30-6.  Meneses attached Stewart's deposition transcript to his opposition to Liberty's
   summary judgment motion.  *Id.*  In reply, Liberty requested the deposition transcript be stricken.
   ECF No. 33 at 4.

1  on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).

2  Thus, even if the deposition transcripts themselves are inadmissible[5] or should be excluded, this

3  would not provide a basis to exclude Jerry Brodeur or Stewart as witnesses.

4       Liberty has not identified a rule that required Meneses to depose these witnesses or else

5  the witnesses would be excluded at trial.  And Liberty has not presented evidence that Meneses

6  failed to identify the witnesses as required under Rule 26(a) such that exclusion of the witnesses,

7  as opposed to the deposition transcripts, might be appropriate.  Liberty could have deposed these

8  witnesses but apparently did not.  Thus, while I grant Liberty's motion to strike the supplement, I

9  do not exclude Jerry Brodeur or Stewart as witnesses.  Consequently, I will consider their

10  deposition testimony attached to Meneses' opposition because that evidence need not be

11  presented in admissible form at summary judgment.  Those witnesses could testify at trial similar

12  to their depositions.

13       Finally, I decline to award fees and costs as a sanction.  Liberty has shown only a

14  violation of Local Rule 7-2(g), which is adequately addressed by striking the supplement.

15  **II.  MENESES' SUMMARY JUDGMENT MOTION (ECF No. 19)**

16       I deny Meneses' summary judgment motion because I grant Liberty's request for Rule

17  56(d) relief.  "Rule 56(d) offers relief to a litigant who, faced with a summary judgment motion,

18  shows the court by affidavit or declaration that 'it cannot present facts essential to justify its

19  opposition.'" *Michelman v. Lincoln Nat'l Life Ins. Co.*, 685 F.3d 887, 899 (9th Cir. 2012)

20  (quoting Rule 56(d)).  A party seeking Rule 56(d) relief bears the burden of showing that "(1) it

21  has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the

22  facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment."

23

---

[5] For this same reason, I overrule Liberty's hearsay objection to the transcripts.

4

1  *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir.

2  2008).  "Where, however, a summary judgment motion is filed so early in the litigation, before a

3  party has had any realistic opportunity to pursue discovery relating to its theory of the case,

4  district courts should grant any Rule [56(d)] motion fairly freely." *Burlington N. Santa Fe R. Co.*

5  *v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003).

6       When confronted with a Rule 56(d) motion, I may "(1) defer considering the [summary

7  judgment] motion or deny it; (2) allow time to obtain affidavits or declarations or to take

8  discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).  Whether to grant

9  relief under this rule lies within my discretion. *Burlington N. Santa Fe R. Co.*, 323 F.3d at 773.

10       I grant Liberty's request for relief because although it was not improper for Meneses to

11  file an early summary judgment motion, Liberty did not have a realistic opportunity to pursue

12  discovery before filing a response.  The summary judgment motion was filed approximately two

13  months after the parties held the Rule 26(f) conference and one month after the scheduling order

14  was entered. ECF Nos. 17, 19.  Liberty thus had little opportunity to take discovery before

15  responding.  As a result, Liberty "cannot be expected to frame [its] motion with great specificity

16  as to the kind of discovery likely to turn up useful information, as the ground for such specificity

17  has not yet been laid." *Burlington N. Santa Fe R. Co.*, 323 F.3d at 774.  However, Liberty

18  identified areas of inquiry that could have proved fruitful, including whether the ATV was

19  registered and whether it was used in service of the cabin. ECF No. 23-1 at 3.  I therefore grant

20  the request for 56(d) relief and consequently deny Meneses' motion for summary judgment

21  without prejudice.

22  / / / /

23  / / / /

1    **III.  LIBERTY'S SUMMARY JUDGMENT MOTION (ECF No. 29)**

2         Summary judgment is appropriate if the movant shows "there is no genuine dispute as to

3    any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

4    56(a), (c).  A fact is material if it "might affect the outcome of the suit under the governing law."

5    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if "the evidence

6    is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

7         The party seeking summary judgment bears the initial burden of informing the court of

8    the basis for its motion and identifying those portions of the record that demonstrate the absence

9    of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The

10   burden then shifts to the non-moving party to set forth specific facts demonstrating there is a

11   genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531

12   (9th Cir. 2000); *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat

13   summary judgment, the nonmoving party must produce evidence of a genuine dispute of material

14   fact that could satisfy its burden at trial.").  I view the evidence and reasonable inferences in the

15   light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523

16   F.3d 915, 920 (9th Cir. 2008).

17        **A.  Auto Policies and Nevada HO Policy**

18        An insured bears the burden of proving that the claim for which coverage is sought falls

19   within the policy's coverage. *Nat'l Auto. & Cas. Ins. Co. v. Havas*, 339 P.2d 767, 768 (Nev.

20   1959).  Meneses and the Brodeurs have not pointed to any policy provisions in the auto policies

21   or the Nevada HO policy that would provide coverage for this incident.  They therefore have not

22   met their burden of raising a genuine dispute of coverage under these policies.  Consequently, I

23   grant Liberty's motion for summary judgment on the auto policies and the Nevada HO policy.

**B. Utah HO Policy**

Coverage E of the Utah policy provides coverage for suits brought against an insured for damages due to "bodily injury" caused by an "occurrence." ECF No. 29-5 at 17.  Meneses' suit against the Brodeurs falls within this coverage.  The burden thus shifts to Liberty to show that an exclusion to that coverage applies. *National Auto. & Cas. Ins. Co.*, 339 P.2d at 768.  If Liberty does so, then the burden shifts back to the defendants to show an exception to the exclusion. *Ace Prop. & Cas. Ins. Co. v. Vegas VP, LP*, No. 2:07-cv-00421-BES-PAL, 2008 WL 2001760, at *4 (D. Nev. May 7, 2008).

Exclusion 1(f) of the Utah HO policy states that coverage E does not apply to bodily injury—

> f. Arising out of:
>
> (1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";
> (2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or
> (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraphs (1) or (2) above.

ECF No. 29-5 at 17-18.  The defendants do not dispute that this exclusion applies.  Instead, they rely on an exception to the exclusion, which states that exclusion 1(f) does not apply to (and therefore coverages exists for): "(4) A vehicle or conveyance not subject to motor vehicle registration which is: (a) Used to service an 'insured's' residence." *Id.* at 18.[6]  The policy does not define what it means by a vehicle or conveyance "not subject to motor vehicle registration"

---

[6] The parties' briefs also set out an exception for a "motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration" and which is "Owned by an 'insured' and on an 'insured location.'" ECF No. 29-5 at 18.  There is no evidence the accident occurred on the Brodeurs' property and although the defendants quote this policy provision, they present no argument as to why this exception to the exclusion would apply.

1   or what being "used to service" the residence entails.  The parties dispute the meaning of these

2   terms.  Consequently, I must interpret the insurance policy.

3        Under Nevada law, I "interpret an insurance policy from the perspective of one not

4   trained in law or in insurance, with the terms of the contract viewed in their plain, ordinary and

5   popular sense." *Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014) (en banc)

6   (quotation omitted).[7]  I "consider the policy as a whole to give reasonable and harmonious

7   meaning to the entire policy," and I should not interpret the policy in a way that leads to "an

8   absurd or unreasonable result." *Id.* (quotation omitted).

9        If the policy is unambiguous, I "interpret it according to the plain meaning of its terms."

10  *Id.*  An insurance policy is ambiguous if "it creates [multiple] reasonable expectations of

11  coverage as drafted." *Id.* (quotation omitted).  "A seemingly clear policy can be rendered

12  ambiguous when applying the policy to the facts leads to multiple reasonable interpretations." *Id.*

13  I interpret ambiguities in the policy against the drafter, which is Liberty. *Id.*  Consequently, if an

14  insurance policy is ambiguous, I "interpret the policy to effectuate the insured's reasonable

15  expectations." *Id.*

16       Additionally, I must interpret clauses providing coverage broadly "to afford the greatest

17  possible coverage to the insured." *Id.* (quotation omitted).  Conversely, I interpret clauses

18  excluding coverage "narrowly against the insurer." *Id.* (quotation omitted).  An exclusion "must

19  be narrowly tailored so that it clearly and distinctly communicates to the insured the nature of the

20  limitation, and specifically delineates what is and is not covered." *Id.* (quotation omitted).

21  / / / /

22

23
_____
[7] The parties cite Nevada law on the interpretation of insurance contracts, so I apply that law as well.

### 1. "Not Subject to Motor Vehicle Registration"

Liberty contends that "not subject to motor vehicle registration" means that the type of vehicle is not subject to registration without inquiry into whether the particular vehicle at issue was actually registered or required to be registered. Liberty contends that Utah law requires ATVs to be registered, so the Brodeurs' ATV was "subject to motor vehicle registration" regardless of whether they qualify for an exemption to registration. The defendants respond that the question is whether their particular ATV was required to be registered, and they contend they fall within an exemption to registration under Utah law so the ATV was "not subject to motor vehicle registration."

The policy does not define what it means by "not subject to motor vehicle registration." The term is ambiguous because it is reasonably susceptible to either Liberty's or the defendants' interpretation and creates a reasonable expectation of coverage for a vehicle that is exempt from registration. I therefore must construe the ambiguity against Liberty and in favor of coverage. *See Am. Fid. Fire Ins. Co. v. Adams*, 625 P.2d 88, 89 (Nev. 1981) (affirming the lower court's determination that an exclusion in a homeowners' policy was ambiguous and the court's factual finding that a dune buggy "was not subject to motor vehicle registration, and was designed for use principally off roads" was "based on substantial evidence"). [8]

The defendants contend that the ATV in question was not subject to registration because under Utah Code § 41-22-9(1)(d), "off-highway vehicles sold by a dealer to a person who is not

---

[8] I do not follow the cases Liberty cites that construe the term "not subject to motor vehicle registration" as unambiguously referring to the type of vehicle being subject to registration because those cases from other states are not consistent with Nevada law on how to interpret insurance policies.

a resident" of Utah is exempt from registration.[9]  Although Liberty questions whether the Brodeurs are Utah residents, the defendants have presented evidence from which a reasonable jury could find the Brodeurs are not Utah residents.  The Brodeurs testified that they have lived in Nevada for many years, have their primary residence here, work and vote here, and go to the Utah cabin only a few weekends each year. *See* ECF Nos. 30-4 at 5-6; 30-5 at 5.  Thus, a reasonable jury could find the Brodeurs were not Utah residents, so the ATV was not subject to motor vehicle registration.

### 2.  "Used to Service an 'Insured's' Residence"

Liberty argues that the question here is not whether the Brodeurs used their ATV to service the cabin but whether the ATV is the type of vehicle homeowners typically would use to service the residence, such as a riding lawn mower.  Liberty contends that because an ATV is generally used for recreation and not to service a home, it is not used to service the residence.  Liberty also asserts that the phrase should be interpreted to cover only those accidents that occur while the vehicle is being used to service the residence.  If so, then the exception to the exclusion would not apply because there is no dispute that Stewart and Meneses were on a recreational ride at the time of the accident.

The defendants respond that the relevant inquiry is a fact question about whether the Brodeurs used the ATV to service the property.  Yvonne Brodeur testified that they used the ATV to go into town to buy supplies for the cabin and Jerry Brodeur and Stewart testified that in the winter Jerry would attach a snow plow to the ATV to plow snow at the cabin. *See* ECF Nos. 30-5 at 9; 30-6 at 14.  They further argue that if Liberty wanted to confine coverage to accidents

---

[9] Liberty does not dispute that this exemption could apply to the Brodeurs' ATV and it does not argue that the defendants have presented no evidence that the ATV was sold by a dealer to the Brodeurs as non-Utah-residents.  I therefore do not address those issues.

1   that occur only while the ATV is being used to service the residence, it should have drafted the

2   policy to say so.

3          The policy does not define "used to service" the residence.  The term is ambiguous

4   because it could reasonably be interpreted to include occasional service to the residence, and it

5   does not state that the exception applies only while the vehicle is being used to perform such

6   service.  It therefore creates a reasonable expectation of coverage for the Brodeurs' ATV.

7          Liberty could have drafted the exception to state that the vehicle must be one that is

8   typically or solely used to service the residence like it did in an endorsement related to coverage

9   C. *See* ECF No. 29-5 at 27 ("We do not cover vehicles or conveyances not subject to motor

10  vehicle registration which are . . . Used solely to service an 'insured's' residence").  But it did

11  not.  And it could have stated that coverage applies only while the vehicle is being used to

12  service the cabin, as it did for the golf cart exclusion. *See id.* at 18 (providing an exception to

13  coverage E, exclusion 1(f) for a "motorized golf cart when used to play golf on a golf course").

14  But it did not.

15         I must construe ambiguities against Liberty and in favor of coverage.  A reasonable jury

16  could find that the Brodeurs used the ATV as a snow plow to plow the cabin's driveway and thus

17  it was used to service the residence. *See Balboa Ins. Co. v. Rhymer*, No. CV 2:11-3440-SB, 2013

18  WL 12241444, at *3 (D.S.C. Jan. 11, 2013) (interpreting the same policy language and

19  concluding coverage may exist "because the record contains evidence that the Elsworths used the

20  ATV 'to service' their residence" and the policy did not "provide any particular restrictions to

21  the exception" and did not require that the accident occur while the ATV was being used to

22  service the property); *Nationwide Mut. Ins. Co. v. Prevatte*, 423 S.E.2d 90, 93 (N.C. Ct. App.

23  1992) (holding exception applied where owners testified they used ATVs "more than 50% of the

1    time to perform chores and maintenance around their home" and noting that the "policy at issue

2    provides that the ATV be used to service the insured's residence, *not* that the ATV be used to

3    service the insured's residence at the time of the accident," where the insurer could have

4    "add[ed] this restriction to the policy," but "chose not to").

5        I acknowledge the concern expressed in *Bumgardner v. Terra Nova Insurance Company*

6    that reading the exception to the exclusion broadly could "provide coverage for an accident that

7    did not occur on an insured location and that involved a vehicle or conveyance that is rarely, if

8    ever, used to service the insured's residence simply because the insured may have used it at one

9    time to do so." 806 So. 2d 945, 949-50 (La. Ct. App. 2002). However, the insurer drafted the

10   policy and could have clarified coverage, as Liberty did in relation to other similar policy

11   provisions. Moreover, I do not hold that a single use of the vehicle at any point in time would

12   suffice to create a genuine dispute about whether a vehicle was used to service the residence.

13   Rather, I hold that, given Nevada law on how to interpret insurance policies, the policy language

14   is ambiguous and the defendants have presented enough evidence from which a reasonable jury

15   in this case could find that the Brodeurs used the ATV to service the residence.

16        In sum, a reasonable jury could find the ATV was a vehicle or land conveyance not

17   subject to motor vehicle registration which is used to service the residence. I therefore deny

18   Liberty's motion.

19        **C. *Cumis* Counsel**

20        In their opposition to Liberty's motion, the Brodeurs contend Liberty must appoint

21   counsel to them under *San Diego Navy Federal Credit Union v. Cumis Insurance Society Inc.*,

22   162 Cal. App. 3d 358 (Cal. Ct. App. 1984). However, the Brodeurs did not assert a counterclaim

23

in this case, so they have no basis to request this relief. *See* ECF No. 11.  Because the appointment of *Cumis* counsel is not at issue in this case, I do not address it further.

**IV.  CONCLUSION**

I THEREFORE ORDER that plaintiffs Liberty Insurance Corporation and LM General Insurance Company's motion to strike **(ECF No. 28) is GRANTED in part**.  Defendant Elias Meneses' supplement **(ECF No. 27) is STRICKEN**.

I FURTHER ORDER that defendant Elias Meneses' motion for summary judgment **(ECF No. 19) is DENIED**.

I FURTHER ORDER that plaintiffs Liberty Insurance Corporation and LM General Insurance Company's motion for summary judgment **(ECF No. 29) is GRANTED in part**.  The motion is granted as to the auto polices and the Nevada homeowners' policy.  The motion is denied as to the Utah homeowners' policy.

DATED this 22nd day of May, 2020.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE