# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

LIBERTY INSURANCE CORPORATION, a foreign corporation, and LM GENERAL INSURANCE COMPANY, a foreign corporation,

Plaintiffs,

v.

YVONNE BRODEUR, an individual; JERRY BRODEUR, an individual; and ELIAS MENESES, an individual,

Defendants.

Case No.   2:19-cv-00457-APG-VCF

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR ENTRY OF JUDGMENT**

I conducted a bench trial in this case on February 8, 2021.  As required under Federal Rule of Civil Procedure 52(a), below are my findings and conclusions.

## ADMISSIBLE EVIDENCE

Preliminarily, I must decide what evidence I may rely upon.  In the Joint Pretrial Order, the parties admitted to various facts that required no proof. ECF No. 40 at 5-6.  I will rely on those facts and the eight exhibits admitted at trial.  The only trial witness was defendant Gerard Brodeur.  Plaintiff Liberty Insurance Company objected to any testimony or evidence presented through Mr. Brodeur that exceeded the scope of the parties' disclosures under Federal Rule of Civil Procedure 26.  Out of an abundance of caution, I allowed Mr. Brodeur to testify beyond the scope of those disclosures because I was not yet sure how I would rule on this issue.  Having now considered the parties' arguments, I will exclude from consideration any testimony that exceeds the scope of those disclosures.

The Brodeurs' Rule 26(a) initial disclosures, dated August 22, 2019, identified Mr. Brodeur as having "relevant, discoverable information . . . [r]egarding the claims of the

underlying case and the damages at issue."  The Brodeurs did not supplement those disclosures.
Defendant Elias Meneses's initial disclosures, dated August 8, 2019, stated that Mr. Brodeur was
"expected to testify to (sic) regarding the facts and circumstances surrounding the incident at
issue hereto."  Meneses's supplemental disclosures did not alter that description.  Liberty
requests that I exclude all testimony by Mr. Brodeur that goes beyond the facts and claims of the
underlying state court lawsuit.

Rule 26(a)(1)(A)(i) requires a party to provide to the other parties "the name . . . of each
individual likely to have discoverable information—along with the subjects of that
information—that the disclosing party may use to support its claims or defenses . . . ."  One of
the purposes of Rule 26(a) is to aid the parties in deciding whether to depose or conduct other
discovery regarding the identified individuals.

Rule 37(c)(1) provides that, "[i]f a party fails to provide information or identify a witness
as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to
supply evidence . . . at a trial, unless the failure was substantially justified or is harmless."  Thus,
I may exclude from trial any evidence that is not within the scope of the Rule 26(a) disclosures.
*Shakespear v. Wal-Mart Stores, Inc*., No. 2:12-cv-01064-MMD, 2013 WL 6498898, at *4 (D.
Nev. Dec. 10, 2013) ("[A]lthough there is a public policy to hear cases on their merits, there is
also a public policy against trial by ambush.").

The Brodeurs' counsel argues that his disclosure about "claims of the underlying case
and damages at issue" is meant to refer to this lawsuit, not to the state court lawsuit.  I reject that
interpretation.  It is the state court lawsuit that gives rise to the Brodeurs' claims under the
insurance policy that is at issue in this case.  The plain meaning of "the underlying case" in this
context is as a reference to that state court lawsuit.  And there are no damages being sought in

1   this case, only a declaration about coverage under the Policy.[1]  I agree with Liberty's request to

2   limit the scope of Mr. Brodeur's testimony to the facts and claims of the underlying state court

3   lawsuit.

4           Where a Rule 37 "sanction amount[s] to dismissal of a claim, the district court [is]

5   required to consider whether the claimed noncompliance involved willfulness, fault, or bad

6   faith, . . . and also to consider the availability of lesser sanctions." *R & R Sails, Inc. v. Ins. Co. of*

7   *Pennsylvania*, 673 F.3d 1240, 1247 (9th Cir. 2012) (citations omitted).  Here, my limitations on

8   evidence do not result in dismissal of a claim.  However, they could significantly limit the

9   Brodeurs' ability to defend Liberty's claim in this case.  Thus, I am proceeding as if the

10  limitations are claim-dispositive under *R&R Sails*.

11          I do not find the Brodeurs' disclosures to be in bad faith.  But they were willful, in the

12  sense of intentional, and the fault of the Brodeurs.  Their disclosures were within their control,

13  they had enough information to make appropriate disclosures, and there was nothing accidental

14  about them.  But even if the Brodeurs "acted in good faith, their good faith alone would not be

15  enough to overcome the other factors." *Jacobsen v. Deseret Book Co*., 287 F.3d 936, 954 (10th

16  Cir. 2002) (noting that prejudice to the other party still exists despite incomplete disclosures

17  made in good faith).  Liberty was entitled to rely on the Brodeurs' disclosures as to what they

18  would testify about at trial.  To the extent that may have lulled them into a false sense of security

19  to forgo conducting depositions or further discovery, that is the Brodeurs' fault.  Allowing them

20  to testify beyond the scope of their disclosures would amount to trial by ambush. *Shakespear*,

21

22

23

_____

[1] Similarly, Elias's initial disclosures that the Brodeurs will testify "regarding the facts and
circumstances surrounding the incident at issue hereto" must be interpreted as referring to the
ATV accident.  There is no other "incident at issue," and the Brodeurs' claims on the policy
cannot be considered an "incident."

No. 2:12-cv-01064-MMD, 2013 WL 6498898, at *4.

I have considered the availability of alternative sanctions, but none are proper in this case. Reopening discovery after such a long period and delaying the trial would punish Liberty and reward the Brodeurs' failure to make proper disclosures. The Rules do not countenance allowing a party that failed to properly disclose information to reopen discovery this late. Limiting the testimony of Mr. Brodeur is appropriate under Rules 26 and 37.

**FINDINGS OF FACT**

1. Jerry and Yvonne Brodeur are residents of Las Vegas, Nevada.

2. The Brodeurs own a cabin located in Kane County, Utah.

3. Plaintiff Liberty Insurance Corporation issued a homeowners policy, Policy Number H37-268-380615-40 (the Policy), that insured the Brodeurs' Utah cabin from July 16, 2015 through at least July 16, 2016. ECF No. 40 at 5, ¶ 1.

4. In May 2016, the Brodeurs visited their cabin with Chase Stewart (Yvonne Brodeur's son) and Chase's friend Elias Meneses.

**5.** The Brodeurs own a Yamaha Rhino all-terrain vehicle (ATV) that they took to their Utah cabin during that visit.

6. During that visit, the Brodeurs allowed Chase to drive the ATV with Elias as a passenger.

7. While Chase and Elias were in the ATV, the ATV turned over and Elias's hand was injured. ECF No. 40 at 6, ¶ 7.

8. The accident occurred away from the Brodeurs' property and not on the insured location at the time of the accident. *Id.* at 6, ¶ 8.

4

9.     Elias sued the Brodeurs for his injuries in the Eighth Judicial District Court, Clark County, Nevada. *Id.* at 6, ¶ 9; Ex. 5.[2]

10.     The Brodeurs made a claim under their two Liberty Homeowner's Policies (one for the Utah cabin and one for their Las Vegas residence) as well as their LM General Insurance Company Auto Policies.  The Brodeurs sought coverage and a defense for Elias's lawsuit against them.

11.     Liberty filed this action seeking a judicial determination that there is no coverage for the Brodeurs' claims under any of their policies.

12.     I previously ruled that the Brodeurs' claims are not covered under either the Liberty Homeowner's Policy for the Las Vegas residence or their LM General Insurance Company Auto Policies. ECF No. 35 at 6:17-23.  Thus, the issue for trial is whether the Brodeurs have coverage under their Utah homeowner's policy (the Policy).

13.     That Policy excludes from coverage claims of bodily injury arising out of the ownership or use of "motor vehicles or all other motorized land conveyances," as well as the entrustment of the vehicles or conveyances to another.  Specifically, that Motor Vehicle Exclusion states:

> **Coverage E - Personal Liability** . . . do[es] not apply to "bodily injury" . . . :
>
> . . . .
>
> f.     Arising out of:
>
> (1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";
>
> (2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

---

[2] References to "exhibits" are to the exhibits entered into evidence during the trial.

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

Ex. 1 at 11-12, Section II - Exclusions ¶ 1(f); ECF No. 40 at 5, ¶ 4.

14.    The Brodeurs' ATV is a motor vehicle or other motorized land conveyance as defined in the Policy.

15.    Elias's state court lawsuit asserts claims against the Brodeurs for vicarious liability and entrustment of the ATV to Chase Stewart.

16.    The Policy includes an exception to the Motor Vehicle Exclusion.  It states:

This exclusion does not apply to:
....
(4)    A vehicle or conveyance not subject to motor vehicle registration which is:
(a)    Used to service an "insured's" residence.
. . . .

Ex. 1 at 12, Section II - Exclusions ¶ 1(f)(4); ECF No. 40 at 6:3-11.

17.    At the time of the accident, the Brodeurs' ATV had a decal issued by Oregon that allowed the ATV to be operated in Oregon, California, Nevada, and Utah, based on reciprocity among those states. Ex. 3 at 3; Ex. 4 at 4; Ex. 6; ECF No. 40 at 6, ¶ 11.

18.    The ATV was not registered in any state at or before the time of the accident. Ex. 2 at 2-3; Ex. 3 at 3.

19.    The ATV was being used for recreational purposes at the time of the ATV accident. ECF No. 40 at 6, ¶ 10.

## CONCLUSIONS OF LAW

1.    Under Nevada law, I "interpret an insurance policy from the perspective of one not trained in law or in insurance, with the terms of the contract viewed in their plain, ordinary and popular sense." *Century Sur. Co. v. Casino West, Inc.*, 329 P.3d 614, 616 (Nev. 2014) (en banc)

6

(quotation omitted).  I "consider the policy as a whole to give reasonable and harmonious meaning to the entire policy," and I should not interpret the policy in a way that leads to "an absurd or unreasonable result." *Id*. (quotation omitted).

2.      The parties agree that the Policy's Motor Vehicle Exclusion applies because the ATV is a "motor vehicle or . . . other motorized land conveyance," and the accident arose out of (1) the use of the ATV; (2) the entrustment by the Brodeurs of the ATV to their son; or (3) the Brodeurs' vicarious liability for the actions of their son using the ATV. Ex. 1 at pages 11-12 of 16, Section II - Exclusions ¶ (1)(f); Order Granting in Part Liberty's Motion for Summary Judgment (ECF No. 35 at 7).

3.      The parties agree that, because the exclusion applies, the defendants have the burden to prove that an exception to the exclusion exists so that coverage is afforded to the Brodeurs. ECF No. 69 at 4; ECF No. 70 at 5.

4.      An exception to the Motor Vehicle Exclusion exists for a vehicle that is "not subject to motor vehicle registration" and is "used to service an 'insured's' residence." Ex. 1 at 12, Section II - Exclusions ¶ (1)(f)(4); ECF No. 40 at 6:3-11.  Both parts of this exception must be proven.

5.      This exception is ambiguous in several ways.  First, it does not specify whether the inquiry relates to this particular ATV or to the class or type of vehicle in general.   For the registration prong, Liberty argues that the language must refer to a "type of vehicle, and is not concerned with fact-specific analyses of whether a particular vehicle will or will not be registered." ECF No. 70 at 9 (quoting *Kimball v. New England Guar. Ins. Co.*, 642 A.2d 1347, 1349 (ME 1994)).  But for the service prong, Liberty argues the opposite by saying "the exception cannot apply when the vehicle is not being used to service the insured's residence <u>at the time of the incident</u>." *Id.* at 14 (emphasis in original) (citing *Bumgardner v. Terra Nova Ins. Co.*, 806 So.2d

945, 949 (La. Ct. App. 2002)).  That is the type of fact-specific analysis Liberty argues against based on *Kimball*.

6.      The exception refers to "*a* vehicle . . . *which is* used to service *an insured's* residence."  The use of the singular (as opposed to "types of vehicle . . . which are") indicates this refers to the particular vehicle at issue, not its type.  Moreover, painting with the broad brush of a type or category of vehicle can lead to disparate results.  For instance, there are many different types of ATVs.  An ATV could be designed, purchased, and used solely for recreation (e.g., riding on trails) or solely for work around a residence (e.g., clearing brush, plowing snow, moving furniture or equipment).  The use could change over time.

7.      Next, the phrase "used to service an insured's residence" is also ambiguous.[3]  It could reasonably be interpreted to include a vehicle that only occasionally services the residence, and it does not state that the vehicle had to be servicing the residence at the time of the incident giving rise to the claim.[4]

8.      Liberty could have resolved these ambiguities by using clearer language. *See* ECF No. 35 at 11.  But it did not.  Resolving these ambiguities against Liberty as I must, I interpret the exception as referring to the Brodeurs' ATV, not to its type.

9.       Even construing ambiguities in favor of the Brodeurs, there is insufficient evidence to show the ATV was used to service the cabin at any time.  I must "interpret ambiguities in an insurance contract against the drafter, which is typically the insurer . . . . So, if an insurance

---

[3] I previously addressed this ambiguity in my order on the parties' motions for summary judgment. ECF No. 35 at 10-12.

[4] The exception is also ambiguous in that it does not specify where the ATV would have to be subject to registration.  Is the inquiry limited to where the ATV is located?  If so, is that solely Utah, where the accident occurred?  Is it Nevada, where the Brodeurs live?  Is it both?  Does the location include anywhere the ATV is taken?  Nothing in the exception clarifies these questions.

1  policy has any ambiguous terms, [I] will interpret the policy to effectuate the insured's reasonable

2  expectations." *Century Sur. Co.*, 329 P.3d at 616 (citation omitted).  The only admissible evidence

3  is that the ATV was being used for a recreational ride by Chase and Elias at the time of the accident.

4  The Brodeurs could not reasonably expect that an ATV used one time for off-property recreation

5  was "used to service" the cabin.[5]

6        10.     Because the Brodeurs have not satisfied their burden of proof as to the second part

7  of the exception (that the ATV was used to service the cabin), I need not resolve whether the ATV

8  was subject to motor vehicle registration in any jurisdiction.

9        11.     Because there is no evidence the ATV was used to service the Brodeurs' cabin, it

10  does not fall within the exception to the exclusion.  Therefore, the Brodeurs are not entitled to

11  coverage under the Policy for the ATV accident that is the subject of the state court lawsuit.

12        12.     No party has presented any evidence or authorities regarding Liberty's obligations

13  to defendant Elias Meneses under the Policy or otherwise.  I therefore deny Liberty's claims

14  regarding Meneses asserted in the Amended Complaint.

15  <u>**ORDER**</u>

16        I HEREBY ORDER that plaintiff Liberty Insurance Corporation is entitled to judgment in

17  its favor on Count One of the Amended Complaint (ECF No. 7) seeking a declaration as to its

18  obligations under the Utah homeowners Policy.  I declare that Liberty has no obligation to defend

19

20

---

21  [5] Indeed, when he submitted the claim, Mr. Brodeur admitted to Liberty that he did not have insurance on the ATV because he previously tried to insure it through Liberty's "off-road

22  division" but he encountered "such a run around" that "[i]t was a pain in the neck" so he gave up. Ex. 7 at 3-4.  The Liberty claims agent responded that he would try to submit it under the homeowner's policy, but he doubted that would work. *Id.*  Mr. Brodeur's admission that the

23  ATV was not insured, and the fact that he tried to insure it separately, evidence his belief that the cabin Policy did not cover it.

and indemnify Yvonne Brodeur and Gerard Brodeur in the underlying Nevada state court lawsuit based upon Liberty's Utah homeowners policy number H37-268-380615-40.

I FURTHER ORDER that Liberty Insurance Corporation and LM General Insurance Company are entitled to judgment in their favor on Counts Two, Three, and Four of the Amended Complaint, as set forth in my prior order partially granting summary judgment. *See* ECF No. 35 at 6. I declare that Liberty Insurance Corporation and LM General Insurance Company have no obligation to defend or indemnify Yvonne Brodeur and Gerard Brodeur in the underlying Nevada state court lawsuit based upon the Nevada homeowner's policy or the automobile policies at issue in those counts.

I FURTHER ORDER that all of the plaintiffs' claims against Elias Meneses are dismissed with prejudice.

I FURTHER ORDER the clerk of the court to enter judgment accordingly.

DATED this 11th day of February, 2021.

 

 

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE