IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| LIBERTY INSURANCE CORPORATION, a foreign corporation, and LM GENERAL INSURANCE COMPANY, a foreign corporation,<br><br>Plaintiffs,<br><br>v.<br><br>YVONNE BRODEUR, an individual; JERRY BRODEUR, an individual; and ELIAS MENESES, an individual,<br><br>Defendants. | Case No. 2:19-cv-00457-APG-VCF<br><br>**REVISED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER FOR ENTRY OF JUDGMENT** |

I conducted a bench trial on February 8, 2021. I entered findings of fact and conclusions of law based on my decision to exclude testimony of defendant Gerard Brodeur related to the use of the subject all-terrain vehicle. ECF No. 78. The Ninth Circuit reversed my decision to exclude that evidence and remanded for a new trial. ECF No. 105. The parties agreed that a new trial was not needed and that I could base my decision on the evidence presented at the first trial. ECF Nos. 113 at 3; 114 at 2. I ordered the parties to give new closing arguments. ECF No. 117. As required under Federal Rule of Civil Procedure 52(a), below are my revised findings and conclusions on remand.

**FINDINGS OF FACT**

1. Gerard and Yvonne Brodeur are residents of Las Vegas, Nevada.

2. The Brodeurs own a cabin located in Utah.

3. Plaintiff Liberty Insurance Corporation issued a homeowners policy, Policy Number H37-268-380615-40 (the Policy), that insured the Brodeurs' Utah cabin from July 16, 2015 through at least July 16, 2016. ECF No. 40 at 5, ¶ 1.

4. In May 2016, the Brodeurs visited their cabin with Chase Stewart (Yvonne Brodeur's son) and Chase's friend Elias Meneses.

5. The Brodeurs own a Yamaha Rhino all-terrain vehicle (ATV) that they used at their Utah cabin during that visit.

6. During that visit, the Brodeurs allowed Chase to drive the ATV with Elias as a passenger.

7. While Chase and Elias were in the ATV, the ATV turned over and Elias's hand was injured. ECF No. 40 at 6, ¶ 7. The ATV was being used for recreational purposes at the time of the accident. *Id.* at 6, ¶ 10.

8. The accident occurred away from the Brodeurs' property and not on the insured location. *Id.* at 6, ¶ 8.

9. Elias sued the Brodeurs for his injuries in the Eighth Judicial District Court, Clark County, Nevada. *Id.* at 6, ¶ 9; Ex. 5.[1] The lawsuit asserts claims against the Brodeurs for vicarious liability and entrustment of the ATV to Chase Stewart.

10. The Brodeurs made a claim under their two Liberty Homeowner's Policies (one for the Utah cabin and one for their Las Vegas residence) as well as their LM General Insurance Company Auto Policies. The Brodeurs sought coverage and a defense for Elias's lawsuit against them.

11. Liberty filed this action seeking a judicial determination that there is no coverage for the Brodeurs' claims under any of its policies.

12. I previously ruled that the Brodeurs' claims are not covered under either the Liberty Homeowner's Policy for the Las Vegas residence or their LM General Insurance

---

[1] References to "exhibits" are to the exhibits entered into evidence during the trial.

Company Auto Policies. ECF No. 35 at 6:17-23. Thus, the issue for trial is whether the Brodeurs have coverage under their Utah homeowner's policy (the Policy).

13. That Policy excludes from coverage claims of injury arising from the ownership or use of "motor vehicles or all other motorized land conveyances," as well as the entrustment of the vehicles or conveyances to another. Specifically, the Motor Vehicle Exclusion states:

> **Coverage E - Personal Liability** . . . do[es] not apply to "bodily injury" . . . :
>
> . . . .
>
> f.  Arising out of:
>
> (1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";
>
> (2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or
>
> (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

Ex. 1 at 11-12, Section II - Exclusions ¶ 1(f); ECF No. 40 at 5, ¶ 4.

14. The Brodeurs' ATV is a motor vehicle or other motorized land conveyance as defined in the Policy.

15. The Policy includes an exception to the Motor Vehicle Exclusion. It states:

> This exclusion does not apply to:
>
> ….
>
> (4) A vehicle or conveyance not subject to motor vehicle registration which is:
>
> (a) Used to service an "insured's" residence.

Ex. 1 at 12, Section II - Exclusions ¶ 1(f)(4); ECF No. 40 at 6:3-11.

16. At the time of the accident, the ATV had a permit decal issued by Oregon, which had reciprocity with California, Nevada, and Utah. Ex. 3 at 3; Ex. 4 at 4; Ex. 6; ECF No. 40 at 6, ¶ 11.

17. Gerard Brodeur testified at trial that the ATV had been registered in Nevada at the time the Brodeurs purchased it. ECF No. 81 at 89, 91. But in their written discovery responses, they testified that the ATV had never been registered in any state. Ex. 2 at 2-3; Ex. 3 at 3.

18. Mr. Brodeur testified that he purchased the ATV to maintain their Utah cabin property. ECF No. 81 at 33-34. *See also id.* at 78 ("My principal reason to buy it was to maintain the property."). For instance, he used it "to help with wood removal, pine needles upkeep and to plow the driveway so [they could] get in and out in the winter and to move the rock around." *Id.* at 34 (simplified).

## **CONCLUSIONS OF LAW**

1. Under Nevada law, I "interpret an insurance policy from the perspective of one not trained in law or in insurance, with the terms of the contract viewed in their plain, ordinary and popular sense." *Century Sur. Co. v. Casino West, Inc.*, 329 P.3d 614, 616 (Nev. 2014) (en banc) (quotation omitted). I "consider the policy as a whole to give reasonable and harmonious meaning to the entire policy," and I should not interpret the policy in a way that leads to "an absurd or unreasonable result." *Id*. (quotation omitted).

2. The parties agree that the Policy's Motor Vehicle Exclusion applies because the ATV is a "motor vehicle or . . . other motorized land conveyance," and the accident arose out of (1) the use of the ATV; (2) the entrustment by the Brodeurs of the ATV to their son; or (3) the Brodeurs' vicarious liability for the actions of their son using the ATV. Ex. 1 at pages 11-12 of

1 | 16, Section II - Exclusions ¶ (1)(f); Order Granting in Part Liberty's Motion for Summary Judgment (ECF No. 35 at 7).

3. The parties agree that, because the exclusion applies, the defendants have the burden to prove that an exception to the exclusion exists so that coverage is afforded to the Brodeurs. ECF Nos. 69 at 4; 70 at 5.

4. An exception to the Motor Vehicle Exclusion exists for a vehicle that is "not subject to motor vehicle registration" and is "used to service an 'insured's' residence." Ex. 1 at 12, Section II - Exclusions ¶ (1)(f)(4); ECF No. 40 at 6:3-11. The defendants must prove both parts of this exception for there to be coverage.

5. I must interpret clauses providing coverage broadly "to afford the greatest possible coverage to the insured." *Century*, 329 P.3d at 616 (quotation omitted). I interpret clauses excluding coverage "narrowly against the insurer." *Id*. (quotation omitted). An exclusion "must be narrowly tailored so that it clearly and distinctly communicates to the insured the nature of the limitation, and specifically delineates what is and is not covered." *Id*. (quotation omitted).

6. I have previously ruled that this exception is ambiguous in several ways. ECF No. 35 at 9, 11. For instance, it does not specify whether the inquiry relates to this particular ATV or to the class or type of vehicle in general. For the registration prong, Liberty argues that the language must refer to a "type of vehicle, and is not concerned with fact-specific analyses of whether a particular vehicle will or will not be registered." ECF No. 70 at 9 (quoting *Kimball v. New England Guar. Ins. Co.*, 642 A.2d 1347, 1349 (ME 1994)). But for the service prong, Liberty argues the opposite by saying "the exception cannot apply when the vehicle is not being used to service the insured's residence <u>at the time of the incident</u>." *Id.* at 14 (emphasis in

original) (citing *Bumgardner v. Terra Nova Ins. Co.*, 806 So.2d 945, 949 (La. Ct. App. 2002)). That is the type of fact-specific analysis Liberty argues against based on *Kimball*.

       7.      The exception refers to "a vehicle . . . which is used to service an insured's residence." The use of the singular (as opposed to "types of vehicles . . . which are") indicates this refers to the particular vehicle at issue, not its type. Moreover, painting with the broad brush of a type or category of vehicle can lead to disparate results. For instance, there are many different types of ATVs. An ATV could be designed, purchased, and used solely for recreation (e.g., riding on trails); solely for work around a residence (e.g., clearing brush, plowing snow, moving furniture or equipment); or for a combination of uses. An ATV could be used differently than it was designed for and its use could change over time. I therefore interpret the exception as referring to the Brodeurs' ATV, rather than to its class or type of ATV in general.

       8.      The registration prong of the exception is ambiguous in that it does not specify where the ATV would have to be subject to registration. Is the inquiry limited to where the ATV is regularly located? If so, is that solely Utah, where the ATV was stored and where the accident occurred? Is it Nevada, where the Brodeurs live? A reasonable expectation of the insured is that this clause would refer to either where they live or where they keep and use the ATV. Here, the parties have focused solely on Nevada and Utah, so I will too.

       9.      The phrase "used to service an insured's residence" is also ambiguous.[2] It could reasonably be interpreted to include a vehicle that only occasionally (even only one time) services the residence, and it does not state that the vehicle had to be servicing the residence at the time of the incident giving rise to the claim.

---

[2] I previously addressed this ambiguity in my order on the parties' motions for summary judgment. ECF No. 35 at 10-12.

10. Liberty could have resolved these ambiguities by using clearer language. *See* ECF No. 35 at 11. But it did not. I must "interpret ambiguities in an insurance contract against the drafter, which is typically the insurer." *Century*, 329 P.3d at 616 (citation omitted). I therefore must construe the ambiguities against Liberty. *See Am. Fid. Fire Ins. Co. v. Adams*, 625 P.2d 88, 89 (Nev. 1981) (affirming the lower court's determination that an exclusion in a homeowners' policy was ambiguous and the court's factual finding that a dune buggy "was not subject to motor vehicle registration, and was designed for use principally off roads" was "based on substantial evidence").

11. But even construing the ambiguities in favor of the Brodeurs, the evidence shows that the exception does not apply here. First, the ATV was subject to registration in either Nevada or Utah. Mr. Brodeur testified that he took the ATV to the Utah cabin immediately after purchasing it, stored it in the cabin's garage when not being used, and did not operate it in Nevada. The relevant Nevada statute at the time of the accident stated that an ATV did not have to be registered in Nevada if it was "registered or certified[3] in another state and is located in [Nevada] for not more than 15 days." Nev. Rev. Stat. § 490.082(3)(c). The Brodeurs admit that the ATV was not registered or certified in any state at the time of the accident. Ex. 3 at 3.[4] Thus, the Brodeurs have not satisfied their burden of proving that the ATV was not subject to registration in Nevada.

---

[3] The term "certified" is not defined in that chapter, but § 490.082 refers in several places to a certificate of title. Thus, a plain reading of the statute indicates that "certified" refers to a certificate of title, not the Oregon permit decal that was on the ATV.

[4] Mr. Brodeur also testified that the ATV was registered in Nevada at the time he purchased it. ECF No. 81 at 91. That is evidence that the Brodeurs were aware that the ATV had to be registered somewhere.

12. Similarly, the ATV was subject to registration in Utah. Utah Code § 41-22-3 requires ATVs like this to be registered unless exempted. Utah Code § 41-22-9(1)(c) exempts from registration ATVs "that are owned by a nonresident and that are displaying a current annual off-highway vehicle user decal in accordance with Section 41-22-35." At the time of the underlying accident, this requirement of a Utah decal could be satisfied if the vehicle was "*registered* in another state that offers reciprocal operating privileges to Utah residents . . . ." Utah Code § 41-22-35(1)(b)(i) (emphasis added). The Brodeur's ATV was not registered in Nevada at the time of the accident. The ATV had a "permit" decal from Oregon (Ex. 6), and Oregon apparently offered reciprocal privileges to Utah residents at that time. ECF No. 81 at 35-36, 99-102. But the Brodeurs presented no evidence or argument to support a conclusion that the permit constitutes registration in Oregon to satisfy Utah Code § 41-22-35(1)(b)(i).[5] And the Utah Code explicitly recognizes a difference between registration and a permit decal. *See* § 41-22-9(1)(c) (exempting from "registration" off-highway vehicles displaying an annual "user decal").

13. Thus, the Brodeurs have not met their burden of proving that the ATV was not subject to registration in Nevada or Utah. So the exception to the exclusion does not apply.

14. As for the use prong of the exception, I discount Mr. Brodeur's testimony that he purchased the ATV primarily to maintain the property. He also testified that he has "been an ATV enthusiast for a number of years" and that he used the ATV and at least one other ATV for recreational purposes in Utah and California. ECF No. 81 at 67, 77-78, 89, 95. It is apparent that the primary use of the ATV was recreational. Nevertheless, the evidence shows the ATV was used to service the cabin on at least a few occasions. ECF No. 81 at 33-34. Construing the

---

[5]

language of the use prong in favor of the Brodeurs, that is sufficient to satisfy that prong of the exception.

15. Because the ATV was subject to registration, it does not fall within the exception to the exclusion. Therefore, the Brodeurs are not entitled to coverage under the Policy for the ATV accident that is the subject of the state court lawsuit.

16. This conclusion is consistent with the Brodeurs' reasonable expectation that the ATV was not insured. "[I]f an insurance policy has any ambiguous terms, [I] will interpret the policy to effectuate the insured's reasonable expectations." *Century*, 329 P.3d at 616 (citation omitted). The evidence presented at trial indicates that the Brodeurs did not have a reasonable expectation that their ATV was insured. When he submitted the claim to Liberty, Mr. Brodeur admitted that the ATV was not insured because he previously tried to insure it through Liberty's "off-road division," but he encountered "such a run around" that "[i]t was a pain in the neck" so he gave up. Ex. 7 at 3-4. The Liberty claims agent responded that he would try to submit it under the homeowner's policy, but he doubted that would work. *Id.* Mr. Brodeur's attempt to separately insure the ATV through the "off-road division" evidences his expectation that the cabin Policy did not cover it. A reasonable insured would not expect their homeowner's policy to cover an accident involving the recreational use of an ATV off property. Rather, like Mr. Brodeur, they would expect that they needed to insure the ATV itself.

/ / / /
/ / / /
/ / / /
/ / / /
/ / / /

9

17.     No party has presented any evidence or authorities regarding Liberty's obligations to defendant Elias Meneses under the Policy or otherwise. I therefore deny Liberty's claims regarding Meneses asserted in the Amended Complaint.

**ORDER**

I HEREBY ORDER that plaintiff Liberty Insurance Corporation is entitled to judgment in its favor on Count One of the Amended Complaint (ECF No. 7) seeking a declaration as to its obligations under the Utah homeowners Policy. I declare that Liberty has no obligation to defend and indemnify Yvonne Brodeur and Gerard Brodeur in the underlying Nevada state court lawsuit based upon Liberty's Utah homeowners policy number H37-268-380615-40.

I FURTHER ORDER that Liberty Insurance Corporation and LM General Insurance Company are entitled to judgment in their favor on Counts Two, Three, and Four of the Amended Complaint, as set forth in my prior order partially granting summary judgment. *See* ECF No. 35 at 6. I declare that Liberty Insurance Corporation and LM General Insurance Company have no obligation to defend or indemnify Yvonne Brodeur and Gerard Brodeur in the underlying Nevada state court lawsuit based upon the Nevada homeowner's policy or the automobile policies at issue in those counts.

I FURTHER ORDER that all of the plaintiffs' claims against Elias Meneses are dismissed with prejudice.

I FURTHER ORDER the clerk of the court to enter judgment accordingly.

DATED this 30th day of January, 2023.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE